**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| MIGUEL TORRES; DALIA TORRES; BRENT PRZYCHODA; AND SURISUDA PRZYCHODA,<br><br>Plaintiffs,<br><br>v.<br><br>AIRBUS AMERICAS, INC.; AIRBUS DS MILITARY AIRCRAFT, INC.; AIRBUS U.S. SPACE & DEFENSE, INC.; M1 SUPPORT SERVICES; BAE SYSTEMS, INC.; BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION, INC.; and BAE SYSTEMS TECHNOLOGY SOLUTIONS & SERVICES, INC.<br><br>Defendants. | ) | CASE NO.: 1:23-CV-00212<br><br>Oral Argument Requested |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Defendants Airbus Americas, Inc., Airbus U.S. Space & Defense, Inc., M1 Support Services, L.P. (incorrectly identified as M1 Support Services), BAE Systems, Inc., BAE Systems Information and Electronic Systems Integration, Inc., and BAE Systems Technology Solutions & Services, Inc. (collectively, "Removing Defendants")[1] oppose Plaintiffs' Motion to Remand. Doc. 36. This Court should deny the Motion to Remand and retain jurisdiction over this action, per its statutory authority to hear the case.

[1] As indicated in the Notice of Removal, Plaintiffs' Complaint also names Airbus DS Military Aircraft, Inc. ("ADSMA"), but ADSMA has been fraudulently joined in this action.

## **INTRODUCTION**

In their Notice of Removal, the Removing Defendants presented three independent bases for removal: federal enclave jurisdiction under 28 U.S.C. § 1331; federal officer jurisdiction under 28 U.S.C. § 1442(a)(1); and diversity jurisdiction under 28 U.S.C. § 1332(a). *See* Doc. 1. Plaintiffs' Motion to Remand contests each of those bases and argues that the Removing Defendants have provided insufficient justification for the exercise of federal jurisdiction. But to deny Plaintiffs' Motion to Remand, the Court need only find that jurisdiction is proper under any one of the three bases presented.

As to diversity jurisdiction, the Plaintiffs' argument rests on speculative and unsupported theories of liability against one Airbus entity, ADSMA, which does nothing with the type of helicopter at issue (the UH-72A Lakota) or with any helicopters at all. With that fraudulently joined entity disregarded, the requirements of complete diversity and the minimum amount in controversy are satisfied and diversity jurisdiction is proper.

As to federal officer jurisdiction, the Plaintiffs have sued defendant M1 Support Services, L.P. ("M1") for allegedly negligent maintenance of the UH-72 Lakota helicopter involved in the accident. But as alleged in the Notice of Removal and further supported by evidence submitted herewith, M1's maintenance activities were performed to military specifications and requirements, at all times under the supervision of the United States Army. For those reasons, the "acting under" and causal nexus requirements of federal officer jurisdiction are satisfied.

Finally, because the Court's diversity jurisdiction and federal officer jurisdiction are properly exercised here, it is unnecessary to reach the issue of federal enclave jurisdiction.

## ARGUMENT

### I. Basis For Removal – Diversity of Citizenship

#### A. Plaintiffs Fail to Show a Reasonable Possibility That They Can Prevail on a Cause of Action Against Fraudulently Joined Defendant ADSMA.

Plaintiffs do not dispute that they are citizens of Alabama (as the Removing Defendants established in the Notice of Removal) and that their citizenship is accordingly diverse from all of the Removing Defendants. *Compare* Doc. 36-1 *with* Doc. 1, at 9-10. Nor do Plaintiffs dispute the Removing Defendants' assertion that this action satisfies the amount in controversy requirement. *Compare* Doc. 36-1 *with* Doc. 1, at 14-16. Thus, this Court has diversity of citizenship jurisdiction under 28 U.S.C. § 1332 unless it finds that Plaintiffs have demonstrated a reasonable possibility that they can prevail on a cause of action against Airbus DS Military Aircraft, Inc. ("ADSMA"). They have not.

Plaintiffs have not submitted any evidence to counter the Declaration of Jose-Antonio de la Fuente that directly refuted, verbatim, all allegations made against ADSMA in Plaintiffs' Complaint, and which established ADSMA's complete lack of involvement with the Airbus UH-72A Lakota helicopter, its throttle and seat components, and the activities at issue in the Complaint. *See* Doc. 36-1 at 11-13; Doc. 1-5. Plaintiffs' Motion to Remand instead posits purely hypothetical questions about theoretical possibilities for recovery against ADSMA that they claim the declaration does not "foreclose." Doc. 36-1 at 11. Under controlling law, Plaintiffs' unsupported – and as shown below materially

untrue – speculation does not create a question of fact from which this Court can find it possible that Plaintiffs could prevail on a cause of action against ADSMA. Moreover, the Court must assess fraudulent joinder based on the Plaintiffs' Complaint at the time of removal. Thus, Plaintiffs' new theories proposed in their unverified post-removal brief not only do not divest the Court of its diversity jurisdiction, but also cannot.

**1. The Controlling Standards for Determining Fraudulent Joinder Have Been Met.**

Plaintiffs acknowledge there must be a "possibility" they can prevail on a cause of action against ADSMA, but they fail to explain what that means under governing law. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). In the Eleventh Circuit, "[c]ourts have understood *possible* state law claim as meaning 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Holmes v. Fresenius Kidney Care of Tuskegee*, Civil Act. No. 3:20-cv-853-ECM, 2021 WL 2292792, at *4 (M.D. Ala. June 4, 2021) (emphasis in original) (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1325, n.5 (11th Cir. 2005)). "Therefore, a possible state law claim must be reasonable and not merely theoretical." *Id.* (internal quotation omitted).

In making this determination, district courts must look at "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322 (emphasis removed). The procedure in determining fraudulent joinder is "similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." *Id.* at 1322-23. The district court must "resolve all questions

of fact … in favor of the plaintiff." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). However, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Legg*, 428 F.3d at 1323. When the plaintiff does not counter a sworn statement submitted by the removing defendant, there is "no question of fact for the court to resolve." *Id.*; *see also Brooks v. Smith & Nephew, Inc.*, CV-06-CO-01805-W, 2007 WL 9711519, at *4 (N.D. Ala. June 8, 2007) ("[A] plaintiff must present evidence to rebut a defendant's claim of fraudulent joinder in order to create a question of fact.").

Moreover, as stated, the determination of whether a resident defendant is fraudulently joined "must be based upon the plaintiff's pleadings ***<u>at the time of removal</u>***." *Legg*, 428 F.3d at 1322 (emphasis added); *see also Cabalceta*, 883 F.2d at 1562 ("Defendants, however, need only show that Plaintiffs have no possible cause of action … *under the allegations of the Plaintiffs' pleading at the time of removal*.") (emphasis in original). Therefore, attempts to create questions of fact through new theories alleged after removal do not divest the Court of diversity jurisdiction. *Henderson v. Goodyear Dunlop Tires N. Am., Ltd.*, No. 3:11-CV-295-WKW, 2011 WL 3503171, at *5 (M.D. Ala. Aug. 10, 2011) ("Plaintiff's post-removal assertion of a new theory of recovery against [the resident defendant], even if allowed, would not divest the court of the subject matter jurisdiction that existed at the time of removal.").

### 2. The Court Should Find Fraudulent Joinder as to ADSMA Because Plaintiffs Have Not Countered the de la Fuente Declaration and Its Rebuttal of All Allegations Against ADSMA in the Complaint.

In *Legg*, the plaintiffs, an Alabama resident and his wife, brought a state court action against several defendants, including Wyeth and three Wyeth sales representatives, alleging that Redux, the anti-obesity drug that Wyeth manufactured, caused the plaintiff to develop valvular heart disease. 428 F.3d at 1319. Wyeth removed the matter to the U.S. District Court for the Northern District of Alabama based on diversity jurisdiction and argued that the plaintiffs fraudulently joined the three Alabama-resident sales representatives to destroy diversity. *Id.* Wyeth attached affidavits of the sales representatives in support of its argument that there was no possibility that the plaintiffs could prevail on a cause of action against them. *Id.* The plaintiffs did not submit any counter affidavits with their motion to remand to rebut the sales representatives' affidavits. *Id.* The district court refused to consider the sales representatives' affidavits and granted the motion to remand. *Id.*

On appeal, the Eleventh Circuit held that the district court erred in refusing to consider the sales representatives' affidavits. *Id.* at 1322. The court further held that although the district court must "resolve all questions of fact … in favor of the plaintiff," "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id.* at 1323. Because the plaintiffs did not dispute the sales representative's sworn statement that he never promoted or sold the drug Redux, "there was no question of fact for the court to resolve." *Id.* Similarly, because the plaintiffs failed

to offer any evidence to dispute another sales representative's sworn statement that she did not know Redux may cause valvular heart disease, her affidavit also was "undisputed" and "the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." *Id.*

Similarly, in *Holmes*, this Court found fraudulent joinder as to a resident defendant nurse who was at the scene of an accident involving a patient moved from a wheelchair, but whose affidavit confirmed that she did not assist the patient moving out of the wheelchair. 2021 WL 2292792, at *4. The plaintiff submitted no counter affidavit to dispute the nurse's lack of involvement in moving the patient. *Id.* Based on the unopposed affidavit, the Court disregarded the nurse's Alabama citizenship for diversity jurisdiction purposes because the pleadings and affidavits established that there was no possible cause of action against her, but remanded the case because, unlike here, the amount in controversy requirement was not satisfied. *Id.* at *5.

Here, Plaintiffs have not come forward with a sworn statement to counter or dispute the de la Fuente Declaration that established ADSMA's complete lack of involvement with the subject helicopter, the throttle and seats, and the activities alleged in the Complaint. Doc. 1-5 at 3-4. This is not surprising since Plaintiffs knew before they moved for remand the identity of both the manufacturer and distributor of the UH-72A helicopter and that ADSMA was not one of them. Defendant Airbus US Space & Defense, Inc. ("Airbus US") filed an Answer to the Complaint and admitted that it supplied and sold the subject helicopter. Doc. 11, ¶ 8. It also identified Airbus Helicopters, Inc. ("AHI"), a Delaware

corporation with its principal place of business in Texas, which is not currently a party, as the helicopter's manufacturer.[2] *Id.* at Exh. A. With no counter to the de la Fuente Declaration, Plaintiffs have failed to create a question of fact to resolve in their favor that would establish a possibility of recovery against ADSMA. Thus, the Court should disregard ADSMA's citizenship. *Legg*, 428 F.3d at 1322; *Holmes*, 2021 WL 2292792, at *4-5.

**3. Plaintiffs' Post-Removal Hypothetical Questions and Theoretical Possibilities Do Not Create a Question of Fact That Divests the Court of Diversity Jurisdiction.**

It is black letter law that unsupported factual assertions and mere speculation do not create a question of fact. As the Eleventh Circuit explained in *Legg*, "[w]hen the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." 428 F.3d at 1323; *see also Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("a sentence in an unsworn brief is not evidence."). Moreover, as this Court explained in *Holmes*, "a possible state law claim must 'be reasonable' and 'not merely theoretical.'" 2021 WL 2292792, at *4, quoting *Legg*, 428 F.3d at n. 5, citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

---

[2] Plaintiffs also knew of ADSMA's lack of involvement through its Motion to Dismiss filed in this Court, to which Plaintiffs have not yet responded. *See* Doc. 8. Nor have Plaintiffs responded to correspondence from Airbus' counsel sent over a month ago offering to assist them in removing improperly named Airbus defendants and in cleaning up the pleading to add AHI as a proper defendant. Exh. A, Declaration of Hoa T. Nguyen, Exh. A (May 3, 2023 letter from R. Woods to Plaintiffs' counsel).

Plaintiffs' Complaint is solely about the Airbus UH-72A Lakota helicopter. Doc. 1-2 at 5-15. It alleges defects in the UH-72A's throttle assembly and seats, and refers repeatedly, and specifically, to the UH-72A as the "subject aircraft" or "subject helicopter" at issue. Doc. 1-2, ¶¶ 14-19, and *passim*. Yet faced with Mr. de la Fuente's Declaration, and lacking any evidence of ADSMA's involvement with the UH-72A or its throttle or seats (as it had none), Plaintiffs pivoted in their Motion to Remand to speculate through hypothetical questions that they claim the de la Fuente Declaration "does not foreclose" about "other models of rotorcraft" that are not at issue in this case. Doc. 36-1 at 11. For example, citing no evidence, they query about ADSMA issuing warnings or instructions related to "UH-60" and "UH-64" helicopters. Doc. 36-1, at 11-12. They also hypothesize that ADSMA's and other Airbus companies' unrelated business activities or unrelated manufacturing, assembly, or engineering facilities in Alabama could connect ADSMA in some way to the subject helicopter, its components, or the accident.[3] *Id.* at 12-13.

What Plaintiffs postulate is neither reasonable nor factually correct. Attached hereto as **Exhibit B** is a second Declaration of Mr. de la Fuente that confirms that ADSMA has not issued warnings or instructions for ***any*** helicopters and that it was not and is not in the business of maintenance, repair, overhaul, or management of helicopters ***at all***. Exh. B, Declaration of Jose-Antonio de la Fuente in Support of Response to Motion to Remand ("Second de la Fuente Decl."), ¶¶ 3-4. Indeed, a company called Sikorsky manufactures

[3] Plaintiffs also argue that "the Airbus Defendants do not even contend that ADSMA lacks sufficient minimum contacts within the state and/or that Alabama state courts do not have personal jurisdiction over it." Doc. 36-1 at 13. That ADSMA has not challenged personal jurisdiction is irrelevant to whether it is possible that Plaintiffs can prevail against it on a cause of action.

the UH-60 "Blackhawk" helicopter,[4] and Removing Defendants are unaware of a UH-64 helicopter, although Boeing manufactures an AH-64 "Apache" helicopter.[5] Moreover, the website Plaintiffs reference as "support" for their assertions about ADSMA's alleged involvement with helicopters does not even belong to ADSMA. Doc. 36-1 at fn. 59-62. Rather, "www.airbusus.com" belongs to Defendant Airbus US, which as Plaintiffs know distributed the subject UH-72A helicopter, and a link within that website confirms that AHI, not ADSMA, built the UH-72 in Mississippi, which Plaintiffs also already know.[6] Furthermore, the website that Plaintiffs claim identifies Mr. de la Fuente as "responsible for leading Airbus U.S.'s Military Aircraft Line of Business in the U.S., which includes the sales of military aircraft," actually lists a different individual as responsible for Airbus US's military ***helicopter*** business.[7] Doc. 36-1 at 13. Mr. de la Fuente's attached Declaration confirms that as President of ADSMA he has no responsibility for helicopters at all, military or otherwise. Exh. B, ¶ 5.

Even if the Court were to accept the unsupported assertions made in Plaintiffs' unverified post-removal brief as true, the law is clear that they would not divest the Court

---

[4] *See* Sikorsky's UH-60M Black Hawk Helicopter Profile, available at https://www.lockheedmartin.com/content/dam/lockheed-martin/rms/documents/black-hawk/sikorsky-UH60M-brochure.pdf, last visited on June 6, 2023. Removing Defendants are not relying on the manufacturer webpages as opposition evidence because they have already met their burden to show fraudulent joinder, but merely reference them to underscore the lack of support for Plaintiffs' hypotheticals.

[5] *See* Boeing's AH-64 Apache Profile, available at https://www.boeing.com/defense/ah-64-apache/, last visited June 6, 2023.

[6] https://us.airbus.com/en/helicopters/products-and-services/military-helicopters/uh-72 ("Like its predecessor [the UH-72A], the UH-72B is built at an Airbus Helicopters Inc., production facility in Columbus, Mississippi…"), last visited on June 6, 2023.

[7] https://airbusus.com/leadership ("Scott Tumpak is responsible for leading Airbus U.S.'s Military Helicopters line of business in the U.S., which includes managing the company's military rotorcraft operation in the U.S."), last visited on June 6, 2023.

of its diversity jurisdiction that existed based on the Complaint ***at the time of removal***. In *Henderson*, the Court rejected the plaintiff's attempt to avoid a fraudulent joinder argument as to a non-diverse defendant by alleging a new theory that the entire motorcycle was defective when the complaint at the time of removal only alleged defects in its tire. 2011 WL 3503171, at *9-12. The Court made clear that a plaintiff cannot "amend away" diversity jurisdiction that existed at the time of removal. *Id.* at *12. The Court explained that without the rule that limits the removal jurisdiction to the claims as alleged in the state court complaint, "disposition of the issue would never be final." *Id.* (quoting *Cavallini v. State Farm Mut. Auto Ins., Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). *See also Holmes*, 2021 WL 2292792, at *3 (in the post-removal stage, a motion to amend a state court complaint may be granted to correct an error in the pleading or the identity of a party, or to clarify a claim because facts had been omitted from a complaint, not to allege new theories or allegations).

The Court should reject Plaintiffs' attempt to deprive Removing Defendants of their right to this federal forum through pure unsupported speculation. *Legg*, 428 F.3d at 1325 ("The removal process was created by Congress to protect defendants. Congress did not extend such protection with one hand and with the other give plaintiffs a bag of tricks to overcome it."). Based on the pleading at the time of the removal and the de la Fuente Declarations, it is clear that there is no reasonable possibility that Plaintiffs can prevail on a cause of action against ADSMA. The Court should therefore disregard its citizenship. Because Removing Defendants and Plaintiffs are diverse in citizenship and the amount in

controversy exceeds $75,000, this Court has subject matter jurisdiction over the action under 28 U.S.C. § 1332.

## II. Basis For Removal – Federal Question – Federal Officer Jurisdiction

Removing Defendant M1 is a federal officer under the three-pronged test cited by Plaintiffs, and thus removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Plaintiffs agree that M1 is a "person" under 28 U.S.C. § 1442(a)(1) and that M1 has a colorable federal defense to Plaintiffs' claims under the government contractor defense. *See* Doc. 36. However, Plaintiffs disagree that M1 has met the "acting under" and "causal nexus" requirements of the federal officer removal statute. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989) (explaining the criteria for federal officer removal). Unlike other removal provisions, Section 1442(a) is liberally construed in favor of removal such that its application is "broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Alfa Mut. Ins. Co. v. Nicholson*, No. 1:13-CV-322-MEF, 2014 WL 903126, at *2 (M.D. Ala. Mar. 7, 2014) (quoting *Willingham v. Morgan,* 395 U.S. 402, 406–07 (1969); *Morgan v. Bill Vann Co., Inc.,* No. 11–cv–535, 2011 WL 6056083, at *3 (S.D. Ala. Dec. 6, 2011)); *Caver v. Cent. Alabama Elec. Co-op.*, No. CIV.A. 15-0129-W, 2015 WL 4742490, at *1 (S.D. Ala. Aug. 11, 2015) (quoting *Watson v. Phillip Morris Companies*, 551 U.S. 142, 147 (2007) ("[t]he words 'acting under' are broad, and this Court has made clear that the statute must be 'liberally construed.").

### A. M1 Has Satisfied the "Acting Under" Requirement.

As to the "acting under" requirement of the federal officer statute, Plaintiffs simply complain that M1 has not provided copies of the documents it references or an affidavit that supports its position that M1 acted under federal authority by assisting and carrying out the duties and tasks of the United States Army. But pursuant to *Alfa Mut. Ins. Co. v. Nicholson*, a case Plaintiffs cited in their remand as an example of additional documentation being provided, M1's allegations in the notice of removal are sufficient. In *Nicholson*, the court found that the allegations in the removal "alone establish that the United States Army exercised control and direction over [defendant] such that the 'acted under' element for removal under § 1442 has been met." *Nicholson*, 2014 WL 903126, at *4. Thus, a comparison of the allegations is appropriate:

| Oshkosh's Allegation in *Nicholson* | M1's Allegation |
|---|---|
| The subject military vehicle was one of 102 HEMTT A4 vehicles procured by the U.S. Army under the Government Contract for the National Guard. In designing, manufacturing and supplying the U.S. Army with the subject HEMTT, Oshkosh acted under the detailed direction and control of the U.S. Army and its officers. An inspector/officer of the U.S. Army who was present at the Oshkosh manufacturing plant personally oversaw the manufacturing process, enforcing compliance with the Army's design specifications. Furthermore, the vehicles ultimately supplied to the U.S. Army were subject to extensive testing and inspection by the U.S. Army as a | As an aircraft maintenance contractor to the Army, all aspects of the maintenance performed by M1 at Fort Rucker are controlled by Army regulations, directives, technical orders, and manuals. All aircraft that M1 maintains, including the subject UH-72A Lakota, are owned and provided under M1's contract with the Army as Government Furnished Property. Therefore, in performing aircraft maintenance for the Army, M1 is acting under federal authority by carrying out its specific objectives.[9] |

[9] *See* Doc. 1.

| | |
|---|---|
| prerequisite to approval, acceptance and use.[8] | |

While M1's removal allegation alone is sufficient, it is further supported by evidence offered herein, which Plaintiffs concede is permissibly offered pursuant to *Willingham v. Morgan*, 395 U.S. 402, 408 n.3 (1969),[10] for three reasons.

First, Plaintiffs' attempt to distinguish *Caver* fails in light of the relationship between the M1 and the United States Army. *See* Doc. 36; *Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1143 (11th Cir. 2017). M1's work was governed by a comprehensive scheme that comprised, among many others, Army Techniques Publications ("ATP"),[11] Defense Contract Management Agency policy,[12] Army Regulations ("AR"),[13] Technical Manuals ("TM"),[14] Training Circulars ("TC"),[15] and United States Army Aviation Center of Excellence Regulation 95-59 ("USAACE 95-59"). *See* Document Summary List, attached as **Exhibit C**; Declaration of Allan H. Lanceta, attached as **Exhibit D**. Moreover, M1 had to comply with all Government approved

---

8 *Alfa Mut. Ins. Co.,* 2014 WL 903126 at *4.

10 *See* 28. U.S.C. § 1653; *Morgan,* 2011 WL 6056083, at *4.

11 *See*, *e.g.*, ATP 3-04.7 (Army Aviation Maintenance), October 2020, available at https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN31028-ATP_3-04.7-000-WEB-1.pdf, last visited on May 31, 2023.

12 *See*, *e.g.*, DCMA Instruction 8210-1D (Contractor's Flight and Ground Operations) (superseding AR 95-20 (Contractor's Flight and Ground Operations), February 6, 2023, available at https://www.dcma.mil/Portals/31/Documents/Aircraft%20Operations/INST_8210-1D_(Rewrite)_(20230206).pdf, last visited on May 31, 2023.

13 *See*, *e.g.*, AR 750-1 (Army Materiel Maintenance Policy), February 2, 2023, available at https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN32929-AR_750-1-000-WEB-1.pdf, last visited on May 31, 2023.

14 *See*, *e.g.*, TM 1-15

15 *See*, *e.g.*, TC 3-04.10 (Aviation Life Support Maintenance), January 2019, https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/ARN14626_TC%203-04x10%20FINAL%20WEB.pdf, last visited on May 31, 2023.

directives, Modification Work Orders (MWOs), Aircraft Engineering Bulletins, Service Bulletins, OEM Service Bulletins, Safety of Flight (SOF) messages, Aviation Safety Action Messages (ASAM), Technical Bulletins (TBs), Maintenance Information Messages (MIMs), Aviation Maintenance Action Messages (AMAMs), Airworthiness Releases (AWRs), All Army Activities (ALARACTs), Maintenance Engineering Call/Order (MEC/MEO), special one-time inspections, and Supplemental Type Certificates (STCs). Exh. D at ¶ 6. The Government directed M1 to perform all OEM specified maintenance, preventive maintenance, operations, and modifications or alterations in order to maintain the level of airworthiness required to maintain FAA airworthiness certification under the Army's Aviation Engineering Directorate (AED) as specified in the applicable Airworthiness Release. *Id.* at ¶ 7. Thus, like in *Caver*, where the Eleventh Circuit found that the relationship between the Central Alabama Electrical Cooperative's operations and the U.S. Department of Agricultural Rural Utilities Service was controlled by "detailed governing regulations and extensive contract provisions," so too was the maintenance M1 performed here. *See Caver*, 845 F.3d at 1143.

Second, M1's product – mission capable aircraft – were to be provided in accordance with government specifications. Exh. D at ¶ 6. The United States Army had the final say as to whether the maintenance was performed to standard by conducting a technical inspection pursuant to appropriate pilot checklists, TMs, Federal Aviation Regulations, and USAACE 95-59. *Id.* at ¶ 11. Thus, like in *Nicholson*, the government, not M1, had final approval and acceptance authority.

Third, M1 performed its work under the supervision of government authority. M1's maintenance was conducted pursuant to AR 95-20. Accordingly, a United States Military maintenance officer, non-commissioned officer, or a government civilian equivalent was responsible for supervision of operations as well as conducting both scheduled and unscheduled inspections and oversight of M1's work. *Id.* at ¶ 10. Again, this mirrors the allegations held to be sufficient in *Nicholson*.

The proffered evidence more than shows that M1's work was not done in a vacuum, but was, instead, highly regulated and scrutinized by officers of the United States Army. Colonel Lanceta's Declaration serves the same purpose as the supplementary declaration in *Nicholson*. Like in *Nicholson*, while M1 submits its removal allegations alone establish that the "United States Army exercised sufficient control and direction over [M1] such that the 'acted under' element for removal under § 1442 has been met,"[16] the additional evidence makes it readily clear that M1 meets the "acted under" element.

**B. <u>M1 Also Satisfies the "Causal Nexus" Requirement of Federal Officer Removal.</u>**

M1 meets the "causal nexus" requirement simply because it "acted under" the direct control of the United States Army for the maintenance of the subject helicopter that Plaintiff contends somehow caused the subject accident. *See Nicholson,* 2014 WL 903126 at *4 ("The Court is also satisfied that because Oshkosh 'acted under' the direct control of the United States Army and its agents in the production of the HEMTT vehicles, the second

[16] *See Alfa Mut. Ins. Co. v. Nicholson,* No. 1:13-CV-322-MEF, 2014 WL 903126, at *4 (M.D. Ala. Mar. 7, 2014).

element for removal under § 1442—a causal nexus—has been met. Accordingly, Oshkosh's removal of this entire action under § 1442 was proper, and the Nicholsons' motion to remand is due to be DENIED." (internal citations omitted)). Further, as M1 explained in the Notice of Removal, the "causal nexus" requirement under 28 U.S.C. § 1442(a)(1) is met because M1 acted under federal authority specifically in relation to its actions as alleged in the Complaint. Indeed, the "hurdle erected by this requirement is quite low." *Caver v. Cent. Alabama Elec. Coop*., 845 F.3d 1135, 1143 (11th Cir. 2017). Despite Plaintiffs' unexplained contention to the contrary, the causal nexus requirement is readily satisfied here.

In light of the "liberal standard favoring federal officer removal," M1 has met all requirements for federal officer removal, and this case is properly within this Court's jurisdiction under 28 U.S.C. § 1442(a)(1). *See Nicholson,* 2014 WL 903126 at *4.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Remand should be denied.

Respectfully submitted,

*/s/ Clinton T. Speegle*
One of the Attorneys for Defendant
M1 Support Services, L.P.

J. Banks Sewell, III
Clinton T. Speegle
M. Wesley Smithart
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North

Birmingham, Alabama 35203
Phone: (205) 581-0700
cspeegle@lightfootlaw.com
wsmithart@lightfootlaw.com

*/s/ Ricardo Woods (with permission)*
Attorneys for Defendants Airbus Americas, Inc. and Airbus U.S. Space & Defense, Inc.

Ricardo Woods
BURR & FORMAN LLP
11 N. Water Street, Suite 22200
Mobile, AL 36602
Phone: (251) 344-5151
Fax: 251-344-9696
Email: rwoods@burr.com

Eric C. Strain (admitted *pro hac vice*)
LOCKE LORD LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281-2101
(212) 415-8600 (Telephone)
(212) 303-2754 (Facsimile)
eric.strain@lockelord.com

Paul Stinson (admitted *pro hac vice*)
LOCKE LORD LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
(415) 318-8810 (Telephone)
(415) 676-5816 (Facsimile)
paul.stinson@lockelord.com

Hoa T. Nguyen (admitted *pro hac vice*)
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)
hoa.nguyen@lockelord.com

*/s/ Brian P. McCarthy (with permission)*
One of the Attorneys for Defendants BAE Systems, Inc., BAE Systems Information and Electronic Systems Integration, Inc., and BAE Systems Technology Solutions & Services, Inc.

Brian P. McCarthy
MCDOWELL KNIGHT ROEDDER & SLEDGE, LLC
11 North Water Street, Ste. 13290
Mobile, AL 36602
bmccarthy@mcdowellknight.com

Mack H. Shultz (admitted *pro hac vice*)
Michael E. Scoville (admitted *pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: +1.206.359.8000
FACSIMILE: +1.206.359.9000
MShultz@perkinscoie.com
MScoville@perkinscoie.com

**CERTIFICATE OF SERVICE**

I certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on June 8, 2023, which will send electronic notification of such filing to the parties. If CM/ECF indicates that Notice needs to be delivered by other means to any of the parties, I certify that a copy will be sent via U.S. Mail, properly addressed, postage prepaid.

Will Lattimore
TURNBULL, HOLCOMB & LEMOINE, P.C.
2101 Sixth Avenue North, Suite 1100
Birmingham, Alabama 35203
wlattimore@turnbullfirm.com

Jonathan Kurtz
SPENCER LAW GROUP
224 Regency Road
Lexington, KY 40503
jonathan@spencerlawgroup.com

Joshua D. Hicks
Gregory M. Funfsinn
Kenneth C. Human
HICKS & FUNFSIMM, PLLC
431 South Broadway, Suite 331
Lexington, Kentucky 40508
josh@hfkylawyers.com
greg@hfkylawyers.com
kenny@hfkylawyers.com

John C. Whitfield
WHITFIELD COLEMAN MONTOYA
19 N. Main Street
Madisonville, KY 42431
jwhitfield@thewcmfirm.com

*/s/ Clinton T. Speegle*
Of Counsel