IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MIGUEL TORRES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 1:23-cv-212-ECM |
| | ) | [WO] |
| AIRBUS HELICOPTERS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

## I. INTRODUCTION

Now pending before the Court is Defendant Airbus Helicopters, Inc.'s ("AHI")

motion to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).

(Doc. 81). Plaintiffs Miguel Torres ("Mr. Torres"); Dalia Torres; and Surisuda Przychoda

("Ms. Przychoda"), individually and as personal representative[1] of Brent Przychoda's

("Mr. Przychoda") estate, (collectively the "Plaintiffs")[2] bring three causes of action

---

[1] The Plaintiffs refer to Ms. Przychoda as the "[e]xecutrix" of Mr. Przychoda's estate. (Doc. 71 at 2). An "executrix" is an outdated term used to describe a woman who "carr[ies] out the provisions in [a] testator's will"—i.e., a "female executor." *See Executrix*, Black's Law Dictionary (12th ed. 2024); *see also Executor*, Black's Law Dictionary (12th ed. 2024). Alabama's Probate Code uses "personal representative" to include "executor[s] . . . and persons who perform substantially the same function under the law governing their status." ALA. CODE § 43-8-1(24). The Order granting of Letters Testamentary to Ms. Przychoda refers to her as "Personal Representative under said Will[.]" (Doc. 57-1 at 2). The Clerk's Office is DIRECTED to correct the docket and refer to Ms. Przychoda as "Surisuda Przychoda, Individually, and as Personal Representative of the Estate of Brent Przychoda."

[2] Mr. Przychoda died on July 15, 2023. (Doc. 71 at 3, para. 5). Throughout this Opinion, the Court uses "the Plaintiffs" to generally refer to the parties who previously brought or continue to maintain claims against the Defendants. At times, the "Plaintiffs" will include periods before and after Mr. Przychoda's death.

against AHI stemming from an April 2021 helicopter crash: product liability (Count I); breach of warranties (Count II); and negligence (Count III). (Doc. 71 at 5–10, paras. 19– 43).[3] Nearly twenty-seven months after the crash, Mr. Przychoda died by suicide on July 15, 2023.[4] (Doc. 81 at 2–3). Consequently, Ms. Przychoda separately brings a wrongful-death claim (Count IV) as personal representative of Mr. Przychoda's estate. (Doc. 71 at 10–11, paras. 44–49).

AHI argues that Counts I, II, and III should be dismissed as time-barred. (Doc. 81 at 3–6). The Plaintiffs oppose AHI's motion to dismiss and argue that Counts I and III of the Second Amended Complaint ("Operative Complaint") are timely because they relate back to the original state court complaint ("Original Complaint") pursuant to Federal Rule of Civil Procedure 15(c). (Doc. 87 at 4–9). The Plaintiffs contend that Count II is timely because the warranties provided by AHI extended to the future performance of the helicopter. (*Id.* at 9–11). AHI argues that Count IV fails to state a claim because Mr. Przychoda's death by suicide exonerates AHI from liability. (Doc. 81 at 6–8). The Plaintiffs argue that Count IV survives AHI's motion to dismiss because AHI's alleged misconduct created an uncontrollable impulse which facilitated Mr. Przychoda's suicide. (Doc. 87 at 12–14). After careful consideration of the motion, briefs, and applicable law,

---

[3] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

[4] The Plaintiffs' Operative Complaint merely alleges that Mr. Przychoda "died on July 15, 2023." (Doc. 71 at 3, para. 5). The Plaintiffs do not contest AHI's characterization of Mr. Przychoda's death and later state that Mr. Przychoda "died by suicide." (Doc. 87 at 12).

the Court finds that AHI's motion to dismiss is due to be GRANTED as to Count IV and

DENIED as to Counts I, II, and III.

## II.  JURISDICTION AND VENUE

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), the federal

officer removal statute. (*See* doc. 49).  Personal jurisdiction and venue are uncontested, and

the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28

U.S.C. § 1391.

## III.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the

legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that

the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a

context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted).  The

plausibility standard requires "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* at 678.  Conclusory allegations that are merely "conceivable" and fail to

rise "above the speculative level" are insufficient to meet the plausibility standard.

*Twombly*, 550 U.S. at 555–56.  This pleading standard "does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

3

me accusation." *Iqbal*, 556 U.S. at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## IV.  FACTS AND PROCEDURAL BACKGROUND[5]

### A.    Factual Background

On April 20, 2021, a United States Army UH-72A Lakota helicopter occupied by Miguel Torres and Brent Przychoda crashed at Fort Novosel's Brown Stagefield in New Brockton, Alabama. (Doc. 71 at 3–5, paras. 6, 12–18).  Mr. Torres served as the pilot-in-command and instructor, while Mr. Przychoda acted as the co-pilot. (*Id.* at 4, para. 13). Mr. Torres instructed Mr. Pryzchoda to perform "a single engine failure to forced landing drill," during which Mr. Przychoda "rotated both throttles to idle"—leading the helicopter "to lose altitude and ultimately lose control, causing an impact with the terrain[.]" (*Id.* at 4, paras. 14, 17).  Mr. Torres and Mr. Pryzchoda were "catastrophically injured" and became paraplegic as a result of the crash. (*Id.* at 2, para. 1; *id.* at 8, para. 34).  Almost twenty-seven months after the crash, Mr. Przychoda died by suicide. (Doc. 87 at 12).[6]

---

[5] At the motion-to-dismiss stage, the Court "view[s] the [Operative] [C]omplaint in the light most favorable to the [P]laintiff[s] and accept[s] all of the [P]laintiff[s'] well-pleaded facts as true." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021) (citation omitted).

[6] In its motion, AHI asserts that "the probate record establish[es] that Mr. Przychoda committed suicide approximately 15 months after the accident." (Doc. 81 at 7).  Noting that Mr. Przychoda "died by suicide on July 15, 2023," the Plaintiffs carry forward AHI's argument regarding a fifteen-month delay without comment. (Doc. 87 at 12).  AHI goes on to assert that Ms. Przychoda "concedes that Mr. Przychoda unfortunately died of suicide approximately 15 months after the accident." (Doc. 88 at 10). Notwithstanding the parties' assertion that the July 15, 2023 suicide occurred fifteen months after the April 20, 2021 accident, the Court finds that the intervening time period is actually almost twenty-seven months.

**B.      Procedural Background**

On March 10, 2023, nearly two years after the crash, the Plaintiffs filed suit against several entities[7] including:  Airbus Americas, Inc. ("AAI"), Airbus DS Military Aircraft Inc. ("ADSMA"), and Airbus U.S. Space & Defense, Inc. ("Airbus U.S.") (collectively the "Airbus Entities") in the Circuit Court of Dale County, Alabama. (Doc. 1-2 at 6, paras. 6–8).  The Plaintiffs' Original Complaint included product liability, breach of warranties, and negligence claims. (*Id.* at 8–13, paras. 20–44).  The Plaintiffs' Original Complaint did not include any claims against AHI but did allege that the Airbus Entities "designed, machined, maintained, manufactured, assembled, supplied, imported, distributed[,] and/or sold the subject helicopter[.]" (*Id.* at 6, paras. 6–8).  On April 13, 2023, the case was removed from the Circuit Court of Dale County to this Court. (Doc. 1 at 1).

AAI and ADSMA filed motions to dismiss arguing that they did not "design, manufacture, produce, market, warrant, distribute, sell, or otherwise ever have actual or legal possession, custody, or control over the . . . helicopter." (Doc. 7 at 2; doc. 8 at 2). Airbus U.S. answered "that it supplied and sold the subject helicopter as originally equipped" but denied that it designed, machined, maintained, or manufactured the helicopter. (Doc. 11 at 4, para. 21).  Airbus U.S. attached to its answer an affidavit from its Senior Director of Government Contracts, which stated that Airbus U.S. "did not

---

[7] The Plaintiffs' Original Complaint included claims against M1 Support Services, [L.P.], BAE Systems, Inc., BAE Systems Information and Electronic Systems Integration Inc., and BAE Systems Technology Solutions & Services, Inc. (Doc. 1-2 at 7, paras. 9–12).

manufacture or assemble the UH-72A helicopter that is the subject of this lawsuit[.]" (*Id.* at 17, para. 2).

On April 20, 2023, the Airbus Entities filed corporate disclosure statements which placed AHI within the Airbus corporate structure. AHI is an AAI subsidiary and an "affiliate" of Airbus U.S. and ADSMA. (Docs. 12–14, at 3). On May 12, 2023, the Plaintiffs subsequently sought to remand this case to state court. (*See* doc. 36). In opposition to remand, Airbus Entities' counsel attached correspondence (dated May 3, 2023) which stated, "the manufacturer and assembler of the subject helicopter is a company named [AHI]." (Doc. 43-1 at 5). Counsel continued, "[a]s our office will also represent AHI in this matter, we invite you to contact us should you require additional information before dismissing [the Airbus Entities] and adding AHI as the proper Airbus defendant." (*Id.*). On February 1, 2024, this Court denied the Plaintiffs' motion to remand. (*See* doc. 49).

With the case firmly in federal court, Ms. Przychoda filed a suggestion of death regarding Mr. Przychoda. (Doc. 53). Next, Ms. Przychoda, as personal representative of Mr. Przychoda's estate sought leave to amend the Original Complaint. (Doc. 58). On March 25, 2024, the Court granted the motion for leave to amend, and Ms. Przychoda, as personal representative, subsequently filed an amended complaint which maintained the claims against the Airbus Entities. (Doc. 68 at 3, paras. 9–13). On April 5, 2024, the Plaintiffs sought leave to file a second amended complaint to substitute AHI "in place of the existing Airbus [E]ntities as the correct party in this action." (Doc. 69-1 at 2). The

Plaintiffs stated that "now that this Court has denied Plantiffs' Motion to Remand and exercised federal jurisdiction . . . Plaintiffs are now in a position to make . . . needed corrections to the [Original] Complaint." (*Id.* at 2). The Plaintiffs' motion was granted, and on April 8, 2024, the Plaintiffs filed their second amended complaint, the Operative Complaint. (*See* docs. 70 & 71). The Operative Complaint removed the Airbus Entities as named Defendants and added AHI—the only remaining Airbus affiliated entity in this lawsuit.

AHI responded to the Plaintiffs' Operative Complaint with this motion to dismiss, which is now before the Court. (Doc. 81). This Opinion does not affect the Plaintiffs' claims against the other remaining Defendants (M1 Support Services, L.P.[8] and BAE Systems Land & Armaments L.P.). AHI's motion to dismiss is fully briefed and ripe for review.

## V.  DISCUSSION

AHI moves to dismiss all four claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court begins its analysis by evaluating AHI's affirmative defenses that Counts I, II, and III are time-barred by the applicable statute of limitations. Next, the Court analyzes Count IV and whether death by suicide, as a matter of law, is an intervening cause which breaks the causal chain between AHI's alleged misconduct and Mr. Przychoda's death.

---

[8] In Defendant M1 Support Services, L.P.'s answer to the Operative Complaint, it represents that the docket incorrectly identifies it as "M1 Support Services." (Doc. 75 at 1). The Clerk of Court is DIRECTED to correct the docket to reflect this change.

A.      **Statute of Limitations:  Counts I, II, and III**

"'A statute of limitations bar is an affirmative defense,' and a plaintiff is 'not required to negate an affirmative defense in [its] complaint.'" *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (alteration in original) (citation omitted).  "A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the fact of the complaint." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020).  But "[w]hen the time bar is apparent from the face of the complaint, 'the burden of alleging facts which would give rise to the tolling [of] the limitations period falls upon the plaintiff.'" *Oakley v. Cepero Trucking, Inc.*, 2020 WL 6828743 at *1 (M.D. Ala. Nov. 20, 2020) (alteration in original) (citation omitted).[9]  At the motion-to-dismiss stage, "a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that [the] Plaintiffs can prove no set of facts that toll the statute." *Lindley v. City of Birmingham*, 515 F. App'x 813, 815 (11th Cir. 2013) (citation omitted).  Because AHI moved to dismiss the Plaintiffs' claims pursuant to Rule 12(b)(6), the claims should not be dismissed unless the defense is apparent on the face of the Operative Complaint.

The parties agree that the Plaintiffs' product liability (Count I) and negligence (Count III) claims are governed by a two-year statute of limitations. *See* ALA. CODE § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract

---

[9] The Court here, and elsewhere in the Opinion, cites to nonbinding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

and not specifically enumerated in this section must be brought within two years."). The Plaintiffs' breach of warranties claim (Count II) is subject to a four-year statute of limitations period. *See* ALA. CODE § 7-2-725(1). AHI seeks dismissal of Counts I, II, and III as time-barred. The Court will evaluate each statute of limitations period below, beginning with Alabama's two-year period for product liability and negligence claims.

### 1. Counts I and III: Product Liability and Negligence

The Plaintiffs' Operative Complaint named AHI as a defendant more than two years after the April 2021 crash. The Plaintiffs do not argue these claims are timely. Instead, they contend that the amendment (Operative Complaint) relates back to the date the Original Complaint was filed—before the claims were time-barred. (Doc. 87 at 4–9).

The Court applies the Federal Rules of Civil Procedure in this federal-question case because the action was removed from state court.[10] *See* FED. R. CIV. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."). Federal Rule of Civil Procedure 15(c) governs when an amendment to a pleading relates back to the date of the original pleading and provides two possible paths for the Plaintiffs' claims to relate back. First, "the law that provides the applicable statute of limitations allows relation back[.]"[11]

---

[10] The Court exercises federal question jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (*See* doc. 49).

[11] The Eleventh Circuit, analyzing Rule 15(c)(1)(A), held that the subsection allows federal courts sitting in diversity to apply state relation-back law when state law provided the pertinent statute of limitations. *See Saxon v. ACF Indus., Inc.*, 254 F.3d 959, 963 (11th Cir. 2001). The Eleventh Circuit has not addressed whether the subsection would apply in federal-question cases in which the statute of limitations is supplied by state law. *See Pompey v. Lumpkin*, 321 F. Supp. 2d 1254, 1258–59 (M.D. Ala. 2004). Here, the statute of limitations is supplied by Alabama law. Even if Rule 15(c)(1)(A) applies in federal-question cases wherein state law provides the statute of limitations, Rule 15(c)(1)(A) would direct the Court to Alabama's laws regarding relation back. Alabama Rule of Civil Procedure 15(c) governs when an amended pleading dates back to the date of the original pleading. ALA. R. CIV. P. 15(c). Alabama's Rule 15(c) is substantially

FED. R. CIV. P. 15(c)(1)(A).  Second, Rule 15(c)(1)(C) allows for an amendment to change a party or the naming of a party against whom a claim is asserted if:  (1) the amendment asserts a claim that arose out of the same conduct, transaction, or occurrence as the original pleading; (2) the "party to be brought in by amendment . . . received such notice[12] of the action [and] it will not be prejudiced in defending on the merits"; and (3) the party brought in by amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C).

Here, the Plaintiffs' Operative Complaint changed the party or the naming of the party against whom a claim is asserted.  Therefore, the Plaintiffs' amendment will relate back to the date of the Original Complaint if Federal Rule 15(c)'s three requirements are met.  As explained below, the Plaintiffs' Operative Complaint satisfies all three requirements of Rule 15(c)(1)(C) and relates back to the date the Original Complaint was

---

similar to its federal counterpart and its application would not alter this Court's finding. *See also Ex parte Profit Boost Marketing Inc.*, 254 So. 3d 862, 869 (Ala. 2017) ("We note that federal decisions construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure because the Alabama Rules were patterned after the Federal Rules.") (citation omitted).  The Court focuses its analysis on Federal Rule of Civil Procedure 15(c)(1)(C).

[12] Federal Rule 15(c)(1)(C) references whether a party to be brought in by amendment "received such notice of the action" and "knew or should have known that the action would have been brought against it" within the "time period provided by Rule 4(m)"—ninety days. *See* FED. R. CIV. P. 4(m).  Alabama Rule of Civil Procedure 15(c)(3) provides a 120-day notice period. ALA. R. CIV. P. 15(c)(3).  The Plaintiffs filed their Original Complaint on March 10, 2023, in the Circuit Court of Dale County, Alabama. (Doc. 1-2 at 5).  Because AHI received notice of the action within the more restrictive ninety-day window, the Court need not discuss Alabama's notice period. (*See* doc. 43-1 at 4–5) (Letter dated May 3, 2023, from the Airbus Entities' counsel indicating that "the manufacturer and assembler of the . . . helicopter is . . . [AHI]" and that the same counsel "will also represent AHI in this matter[.]").  This fifty-four-day period shows that AHI knew or should have known within the time period contemplated by Federal Rule 15(c)(1)(C) that the action would have been brought against it, absent a mistake.

filed. First, the Plaintiffs' Operative and Original Complaints involve claims arising out of the same occurrence—the April 2021 helicopter crash. Second, AHI received notice of the action within the time period contemplated by Rule 15(c)(1)(C) and fails to show how it would be prejudiced in defending the case on its merits. (*See* doc. 43-1 at 4–5) (May 3, 2023 letter stating that counsel for the Airbus Entities, would "also represent AHI in this matter[.]"). The parties' dispute centers on Rule 15(c)(1)(C)'s third requirement— whether AHI "knew or should have known that the action would have been brought against it, but for a *mistake* concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C) (emphasis added). Accordingly, the Court focuses its analysis on this prong.

Rule 15(c)(1)(C)(ii) "asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing [their] original complaint." *Krupski v. Costa Crociere*, 560 U.S. 538, 548 (2010) (emphases in original). On March 10, 2023, the Plaintiffs filed suit against the Airbus Entities. (Doc. 1-2 at 5). Shortly after the Original Complaint's filing and within the Rule 4(m) notice period, counsel for the Airbus Entities contacted the Plaintiffs and informed them that AHI designed and manufactured the helicopter. (Doc. 43-1 at 4–5). Counsel reiterated that the Airbus Entities' counsel would also represent AHI in this matter. (*Id.* at 5). Therefore, AHI affirmatively knew that the action should have been brought against it. However, the key question for the Court is whether the Plaintiffs made a mistake concerning the proper party's identity.

A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." *Kruspki*, 560 U.S. at 548 (alteration in original) (citing Black's Law Dictionary 1092 (9th ed. 2009)). The Plaintiffs argue that their choice to sue the Airbus Entities was a mistake as defined by Federal Rule 15(c)(1)(C)(ii). The Plaintiffs "incorrectly" believed "that the various Airbus [E]ntities were all elements of the same corporate whole of Airbus." (Doc. 87 at 1–2). AHI argues that the Plaintiffs made "a deliberate choice to sue [the Airbus Entities] instead of [AHI] while fully understanding the factual and legal differences between the two parties [which] is the antithesis of making a mistake concerning the proper party's identity." (Doc. 88 at 7) (citing *Kruspki*, 560 U.S. at 549). AHI contends that "[t]he record supports . . . that [the] Plaintiffs deliberately decided not sue AHI despite knowing its identity while (for whatever strategic reason) pursuing [the Airbus Entities] they knew were incorrect." (*Id.* 88 at 8).

The Original Complaint made clear that the Plaintiffs intended to sue the (company or) companies responsible for designing, machining, maintaining, manufacturing, assembling, supplying, importing, or distributing the UH-72A Lakota helicopter. (Doc. 1-2 at 6, paras. 6–8). The Plaintiffs state that the decision to sue the Airbus Entities was due to a misunderstanding about which Airbus entity designed and manufactured the helicopter. (Doc. 87 at 1–2). The Airbus Entities and AHI were all represented by the same counsel who reviewed the Original Complaint. *Cf. Krupski*, 560 U.S. at 544–45 (noting that the same counsel represented the first named defendant and the defendant named in the amended complaint). The Airbus Entities' corporate disclosure statements highlight

how related corporate entities with similar names could sow confusion and lead to a mistake.  "This interrelationship and similarity heighten the expectation that [AHI] should [have] suspect[ed] a mistake ha[d] been made when [the Airbus Entities] [were] named in a complaint that actually describes [AHI]'s activities." *See Krupski*, 560 U.S. at 556.

AHI opposes characterizing the Plaintiffs' conduct as a mistake and notes that a "simple search on Google confirms that AHI is the manufacturer of the UH-72A 'Lakota' helicopter." (Doc. 88 at 6 n.4).  But the "reasonableness of the mistake is not itself at issue." *Krupski*, 560 at 549.  A mistaken choice to sue an entity because a plaintiff misunderstands its role in the events giving rise to the claims at issue does not foreclose a finding that Rule 15(c)(1)(C)(ii)'s mistake element has been satisfied. *Id.*  AHI also argues that the Plaintiffs waited "more than eleven months after receiving AHI's letter" informing them that AHI manufactured the helicopter to amend the Original Complaint. (Doc. 88 at 6).  The Plaintiffs note the delay was caused in part because "the entire case was held in stasis" while the Court considered their motion to remand. (Doc. 87 at 2).  Although the Plaintiffs are incorrect that a case is held in "stasis" while a motion to remand is pending, AHI's contention does not alter the Court's findings.[13]  Even if the Plaintiffs operated dilatorily and should have amended the Original Complaint sooner, an amending party's diligence is not part of Rule 15(c)'s analysis. *See Krupski*, 560 U.S. at 552–53.

---

[13] A plaintiff is not required to sit idle while a motion for remand is considered by the Court. *See e.g.*, *Royal Canin U.S.A., Inc., v. Wullschleger*, 604 U.S. 22, 30 (Jan. 15, 2025) ("When a plaintiff amends her complaint *following her suit's removal*, a federal court's jurisdiction depends on what the new complaint says.") (emphasis added).

Federal Rule 15(c) "mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." *Id.* The Plaintiffs changed the party or the naming of the party against whom their claims are asserted and satisfied Rule 15(c)'s requirements. First, the Operative Complaint arose out of the same occurrence as the Original Complaint. Second, AHI received notice of the action within the period contemplated by Rule 15(c)(1)(C) and failed to show prejudice in defending the merits of the case. Third, the Plaintiffs showed that AHI knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Therefore, the Plaintiffs product liability (Count I) and negligence (Count III) claims relate back to the date of the filing of the Original Complaint.

### 2. Count II: Breach of Warranties

In Count II, the Plaintiffs claim AHI breached two implied warranties under Alabama law: (1) the warranty of merchantability and (2) the warranty of fitness for a particular purpose. *See* ALA. CODE §§ 7-2-314, 315, 318.[14] The Plaintiffs claim that AHI

---

[14] AHI manufactured and assembled the helicopter, which the Plaintiffs did not purchase. (*See* doc. 43-1 at 5). AHI sold the helicopter to "Airbus Defense and Space, Inc." on September 28, 2016. (Doc. 81-1 at 8). "[A] seller is anyone who sells, including a manufacturer or distributor." *Bishop v. Faroy Sales*, 336 So. 2d 1340, 1343 (Ala. 1976). Under Alabama law, "[a] sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." ALA. CODE § 7-2-318. "Thus, by the terms of the statute, a manufacturer's or distributor's warranty would extend to the final buyer-consumer of the product (as well as to other possible parties horizontally) if he is injured in person by the breach of the warranty." *Bishop*, 336 So. 2d at 1343. At this stage in the proceedings, and without the benefit of briefing on the issue, the Court assumes that it is reasonable to expect that the Plaintiffs could be affected by the helicopter, such that they would be considered "third-party beneficiaries" of AHI's implied warranties because their injuries allegedly stem from the helicopter's operation and use. *See* ALA. CODE § 7-2-318. Additionally, "privity is not required to enforce an implied warranty resulting in personal injury." *Parker v. Exterior Restorations, Inc.*, 653 F. Supp. 3d 1105, 1111 (S.D. Ala. 2023); *see also Rampey v. Novartis*

breached these implied warranties because the helicopter and its components were: (1) "defective and inadequate for the purpose intended" and (2) "not fair or average quality as compared to other helicopters made by competitors or of the same quality as others manufactured or maintained by [AHI]." (Doc. 71 at 9, paras. 39–40). AHI argues that the Plaintiffs' implied warranties claim (Count II) is time-barred by a four-year statute of limitations period. *See* ALA. CODE §7-2-725(1). The Plaintiffs argue that their breach of warranties claim is timely because the warranties at issue extended to the future performance of the helicopter. Although the Plaintiffs fail to show that the warranties extended to the future performance of the helicopter, Count II survives the motion to dismiss because AHI failed to meet their burden of establishing that the breach of warranties claim is time-barred.

The Plaintiffs' breach of implied warranties claim (Count II) is subject to a four-year statute of limitations.[15] *Id.* Ordinarily, a "breach of warranty occurs when tender of delivery is made." *Id.* at (2). This general rule does not apply "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been

---

*Consumer Health, Inc.*, 867 So. 2d 1079, 1089 (Ala. 2003) (noting that Alabama law has "abolished privity requirements [] in actions involving personal injury to natural persons."). Although the Plaintiffs' Operative Complaint does not establish a typical buyer-seller relationship with AHI, privity is not required because the Plaintiffs claim that AHI's breaches of implied warranties caused "severe and permanent [personal] injuries" to Mr. Torres and Mr. Przychoda, natural persons. (Doc. 71 at 9).

[15] The statute provides that "a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs." ALA. CODE § 7-2-725(2). A consumer good includes, "goods that are used or bought for use primarily for personal, family, or household purposes." *Id.* at § 7-9A-102(a)(23). Here, both parties agree that the helicopter is not a "consumer good" as contemplated by the statute.

discovered." *Id.*  The Plaintiffs argue that the four-year statute of limitations period is tolled because the helicopter "was sold with explicit and express warranties for its fitness for the purpose[] of serving as a military helicopter[.]" (Doc. 87 at 11).  The Plaintiffs also contend that because AHI planned for the helicopter to be used in the United States military that the "Federal Acquisition Regulations" apply which contemplate "warranties beyond the date of delivery." (*Id.* at 10).  The Plaintiffs' Operative Complaint does not reference any express warranties provided by AHI.

The Plaintiffs' claim that AHI breached the warranty of fitness for a particular purpose and the warranty of merchantability involve *implied* warranties—ones that are not created by the overt words or actions of the seller. *Cf. Express Warranty*, Black's Law Dictionary (12th ed. 2024).  The Operative Complaint and Alabama case law foreclose the Plaintiffs' argument that the helicopter was sold with express warranties.  First, the Operative Complaint only discusses implied warranties.  Additionally, the exception to the four-year limitations period for "future performance of goods" does not extend to an implied warranty like the ones at issue here.  *Carrell v. Masonite Corp.*, 775 So. 2d 121, 124 (Ala. 2000); *see also Wright v. Cutler-Hammer, Inc.*, 358 So. 2d 444, 445–46 (Ala. 1978) ("[T]he exception here considered applies only to express warranties which explicitly extend the warranty to future performance.").  Therefore, because the Plaintiffs failed to plead any claims related to an express warranty, and the Court is limited to the Operative Complaint, the four-year statute of limitations period runs from the "tender of delivery." ALA. CODE § 7-2-725(2).

Even though the four-year period applies, AHI still bears the burden of establishing that the Plaintiffs' breach of warranties claim is time-barred.  *See Wainberg*, 93 F.4th at 1224.  AHI asks the Court to take judicial notice of the "Bill of Sale for the [helicopter], which is publicly available from [Federal Aviation Administration] records, [which] shows that AHI sold [the helicopter] on September 28, 2016." (Doc. 81 at 5).  Even if the Court took judicial notice of the bill of sale, AHI has failed to establish when "tender of delivery" was made. *See Lands v. Lull Int'l, Inc.*, 963 So.2d 626, 629 (Ala. 2007) ("[A] breach-of-warranty claim accrues when the warrantied item is delivered.").  AHI simply provides a bill of sale without establishing that AHI "put and h[e]ld conforming goods at the buyer's disposition and g[a]ve the buyer any notification reasonably necessary to enable him to take delivery." ALA. CODE § 7-2-503(1).  Additionally, AHI does not describe the nature of the agreement between AHI and Airbus U.S., or how tender of delivery was to be effectuated. (*See* doc. 81-1 at 8).  Without this information, at this stage, the Court cannot determine when tender of delivery was made.  Therefore, AHI fails to meet its burden to establish the affirmative defense and Count II of the Plaintiffs' Operative Complaint survives the motion to dismiss.

**B.    Count IV:  Wrongful Death**

In Count IV, Ms. Przychoda, as personal representative of Mr. Przychoda's estate brings a wrongful-death claim under Alabama law.[16]  On July 15, 2023, Mr. Przychoda

---

[16] In Section V.B, the Court refers to Ms. Przychoda in her capacity as personal representative of Mr. Przychoda's estate.

died by suicide. (Doc. 87 at 12).  Under Alabama's wrongful-death statute, a decedent's personal representative may sue a corporation to recover damages for "the wrongful act, omission, or negligence" that caused the decedent's death. ALA. CODE § 6-5-410(a).  Ms. Przychoda timely sued AHI to recover damages for Mr. Pryzchoda's death, arguing that AHI's "negligence caused the injuries and w[as] the proximate cause that later led to [Mr.] Przychoda's death." (Doc. 71 at 10, para. 46).  AHI argues that Mr. Przychoda's suicide was an intervening act, which exonerates it from legal liability. (Doc. 81 at 6–7).

Here, AHI's alleged negligent conduct underlies Ms. Przychoda's wrongful-death claim—which requires her to show proximate cause between AHI's breach of duty and the actionable injury—Mr. Pryzchoda's death. *Lemley v. Wilson*, 178 So. 3d 834, 841–42 (Ala. 2015).  "Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994). At the motion-to-dismiss stage, the Court resolves whether Mr. Przychoda's death by suicide, as a matter of law, was an independent cause that severed the causation chain between AHI's alleged negligence and his death.

"Under Alabama law, suicide generally functions as an efficient intervening cause which serves to break all causal connections between the alleged wrongful or negligent acts and the death at issue." *Vinson v. Clarke Cnty.*, 10 F. Supp. 2d 1282, 1303 (S.D. Ala. 1998).  Although "in most circumstances, no action will lie to recover damages for allegedly causing another person's suicide[,]" a defendant can be held liable for a

decedent's suicide "when the defendant's actions are alleged to have created an 'uncontrollable impulse' in the victim leading to suicide." *Rondini v. Bunn*, 338 So. 3d 749, 752 (Ala. 2021) (citing *Prill v. Marone*, 23 So. 3d 1, 8 (Ala. 2009)). A victim's uncontrollable impulse consists of "'a <u>delirium</u>, frenzy[,] or rage, during which the deceased commits suicides without conscious volition to produce death.'" *Prill*, 23 So. 3d at 8 (emphasis in original) (citations omitted).

The facts as pled, establish that Mr. Przychoda was injured in an April 20, 2021 helicopter crash, which caused "catastrophic[] injur[ies] . . . [to] [his] health, strength, and activity." (Doc. 71 at 8, para. 34). He sustained "injury to [his] body and shock to [his] nervous system and person[.]" (*Id.*). Additionally, Mr. Przychoda's injuries caused "great pain and suffering . . . [and he] became . . . paraplegic[.]" (*Id.*). Without explanation, the Plaintiffs' Operative Complaint notes that Mr. Przychoda "died on July 15, 2023." (*Id.* at 3, para. 5). The Plaintiffs' Operative Complaint does not establish Mr. Przychoda's cause of death or the circumstances surrounding his death. Put plainly, an unfamiliar reader reviewing the Plaintiffs' Operative Complaint would not know that Mr. Przychoda died by suicide. Ms. Przychoda has not plainly alleged that Mr. Przychoda died by suicide. *Cf. Rondini v. Bunn*, 2018 WL 317713, at *11 (N.D. Ala. Jan. 8, 2018) ("The Personal Representative plainly alleges that [the decedent] committed suicide."). Similarly, Ms. Przychoda's suggestion of death does not state Mr. Przychoda's cause of death. (Doc. 53 at 1).

19

The Operative Complaint fails to allege that Mr. Pryzchoda died by suicide and fails to plead that AHI's allegedly negligent conduct created an uncontrollable impulse leading to suicide. Therefore, even when reading the facts as pled in the Operative Complaint as true and construing them in the light most favorable to Ms. Przychoda, the Court is left to speculate how Mr. Pryzchoda died and what occurred in the intervening months between the April 2021 crash and his July 2023 death.

In response to AHI's motion to dismiss, Ms. Przychoda acknowledged Mr. Przychoda's death by suicide and argues that her wrongful-death claim meets the "uncontrollable impulse" exception to Alabama's general rule that no action will lie to recover damages for causing another person's suicide. (Doc. 87 at 12–14); *see also Rondini*, 338 So. 3d at 752 (citing *Prill*, 23 So. 3d at 8.). Ms. Przychoda, for the first time, argues that Mr. Przychoda suffered "a severe traumatic brain injury, with systemic widespread damage to his brain." (*Id.* at 14). Ms. Przychoda asks the Court to consider Mr. Przychoda's medical records and literature from the Defense Suicide Prevention Office, in support of her uncontrollable impulse theory. (*See* docs. 87-3, 87-4, & 87-5). She argues the Court can draw "a reasonable inference . . . between the significant traumatic brain injury, [and Mr.] Pryzchoda's long, difficult, and incomplete recovery, [coupled with] the known relation to a loss of impulse control, and suicide" to establish that the uncontrollable impulse exception applies. (Doc. 87 at 14).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits

attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  The Court cabined its review to the Operative Complaint and did not consider the exhibits attached to the Plaintiffs' response.  Even if the Court considered the medical records and suicide prevention literature, because Mr. Przychoda died by suicide, Ms. Przychoda would still have to show that the uncontrollable impulse exception applies. *See Rondini*, 338 So. 3d at 752.

The facts as pled show that Mr. Przychoda suffered severe injuries and sustained a "shock" to his nervous system, but the Operative Complaint does not allege facts to establish that AHI's negligent conduct created an uncontrollable impulse.  Ms. Przychoda did not allege facts regarding Mr. Przychoda's condition which are sufficient to establish an uncontrollable impulse—especially when his cause of death was not included in the Operative Complaint.  There are no facts to suggest Mr. Przychoda was in "a delirium, frenzy[,] or rage" and died by suicide "'without conscious volition to produce death.'" *Prill*, 23 So. 3d at 8 (emphasis in original) (citations omitted).  Indeed, the nearly twenty-seven-month gap between the helicopter crash and Przychoda's death "is long enough to doubt the irresistibility of Mr. [Pryzchoda's] actions due to" AHI's alleged misconduct. *Missildine v. City of Montgomery*, 907 F. Supp. 1501, 1506 (M.D. Ala. 1995).

Ms. Przychoda notes that "justice requires discovery into this topic to determine the extent of the damage and loss of impulse control and other cognitive deficits that Przychoda suffered post-crash that relate to his emotional processing, impulse control, and mental

health." (Doc. 87 at 14). "Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when h[er] complaint has failed to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (citation omitted). Indeed, Ms. Pryzchoda had from July 15, 2023, to April 8, 2024 (the filing of the Operative Complaint) to craft a well-pleaded complaint. The Court finds that Ms. Pryzchoda failed to meet her burden to establish that as a matter of law, Mr. Przychoda's suicide did not break the chain of causation between AHI's alleged misconduct and Mr. Przychoda's death. Therefore, the Court dismisses Count IV of the Operative Complaint against AHI.

## VI.  CONCLUSION

For the reasons stated, it is hereby ORDERED as follows:

1.      AHI's motion to dismiss (doc. 81) is GRANTED as to Count IV brought by Plaintiff Surisuda Przychoda, as personal representative of Brent Przychoda's estate.

2.      AHI's motion to dismiss (doc. 81) is DENIED as to Counts I, II, and III.

DONE this 28th day of March, 2025.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE